# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ARTURO ALMAGER,

    Plaintiff,

vs.                                                No. 1:20-cv-00368-WJ-LF

JOHN DOE, UNINSURED DRIVER, and
PHILADELPHIA INDEMNITY INSURANCE COMPANY,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING PHILADELPHIA INDEMNITY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT
## AND
## ORDER FOR SURREPLY
## ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court upon opposing motions by Arturo Almager (the "Plaintiff") and Philadelphia Indemnity Insurance Company (the "Defendant") for summary judgment on the merits, both filed on July 31, 2020. Plaintiff claims in his motion ("Plaintiff's Motion") entitlement to uninsured motorist coverage under an insurance policy issued by the Defendant to the Albuquerque Housing Authority (the "Policy"), on the grounds that the gunshot wounds inflicted upon Plaintiff by the John Doe assailant arose from the operation, maintenance or use of an uninsured motor vehicle. Defendant contends in its motion ("Defendant's Motion") that Plaintiff is neither covered by the Policy nor that his gunshot wounds arose as a result of the operation, maintenance or use of an uninsured vehicle, and that, accordingly, summary judgment should be granted in its favor. For the reasons set forth in this Memorandum Opinion and Order, the Court **DENIES** Defendant's Motion, and declines to rule on Plaintiff's Motion until after Defendant files its surreply in accordance with the instructions of the Court.

## BACKGROUND

On November 28, 2018, Plaintiff, an employee of the Albuquerque Housing Authority, was working at a location operated by his employer. Joint Set of Stipulated Facts (the "Joint Statement of Facts"), Doc. 18 at 1. While inside, Plaintiff observed John Doe attempting to steal Plaintiff's company vehicle (a Dodge Ram) (the "insured vehicle" or "covered vehicle") from the parking lot. Plaintiff left the building and confronted John Doe to halt the attempted theft, ultimately tackling him to the ground. *Id*. At the time of the attempted theft, another vehicle (a white Kia Optima or Hyundai Elantra) (the "get-away car" or "uninsured vehicle") was parked behind the Dodge Ram. *Id.* at 2. A woman, referenced in the caption of this case as the uninsured driver, exited the get-away car and instructed the would-be car thief, John Doe, to "take care of him," referring, of course, to the Plaintiff. *Id*. John Doe then shot the Plaintiff two times, returned to the get-away car with the woman, and fled. Neither John Doe nor the woman have been identified or arrested. *Id*.

As a result of the gunshot wounds, Plaintiff sustained significant injuries[1] and requested $1,000,000 from Defendant insurance company. *Id*. Defendant denied Plaintiff's claim, alleging that Plaintiff was not insured under the Policy at the time of the incident, that Plaintiff was not

---

[1] Plaintiff Almager sustained extensive physical damage to his lower abdomen and spine, including spermatic cord hematoma. Doc. 1-1 at 4. He underwent surgery and experienced pain, with multiple hospital visits, over the course of several months, and underwent physical therapy for nearly a year. *Id*. at 4-5. Following the medical procedures, Plaintiff sustained long-term injury, including degenerative changes and disc misalignment in his back, as well as metallic fragments near or in the spine, severe pain and muscle spasms, permanent disfigurement, physical damage, pain and dysfunction. *Id*. at 4-7. Plaintiff now seeks damages for current and future impairment, medical expenditures, pain and suffering, loss of enjoyment of life, lost wages, compensatory damages and punitive damages. *Id*. at 7.

"occupying" a covered "auto" at the time of the incident, and that Plaintiff's injuries did not result from the ownership, maintenance or use of the uninsured motor vehicle or the get-away car.[2] *Id.*

The Policy contains a form (CA 31 29 10 13) titled "New Mexico Uninsured Motorists Coverage – Nonstacked," which includes the following relevant provisions:

**A.    Coverage**

    **1.**    We will pay all sums the "insured" is legally entitled to recover as damages from the owner or driver of an "uninsured motor vehicle" because of:

        **a.**    "Bodily injury" sustained by an "insured" and caused by an "accident"; or
        **b.**    "Property damages" caused by an "accident."

The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle."

**B.    Who Is An Insured**

If the Named Insured is designated in the Declarations as:

    **2.**    A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

        **a.**    Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto".
        **b.**    Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".
        **c.**    The Named Insured for "property damage" only.

**F.    Additional Definitions**

    **4.**    "Uninsured motor vehicle" means a land motor vehicle or "trailer":

        **d.**    That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must either:

            **(1)**    Hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying"; or

---

[2] Hit-and-run drivers, including drive-by shooters who did not physically "hit" an insured with an unknown vehicle, are considered "a specie of uninsured motorist" so long as, *inter alia*, the *use* of the unknown vehicle (in this case, the get-away car) causes bodily injury to an insured. *See State Farm Mut. Auto. Ins. Co. v. Luebbers*, 138 N.M. 289, 293 (N.M. Ct. App. 2005).

>> **(2)** Cause "bodily injury" or "property damage" with no physical contact with an "insured", a covered "auto" or a vehicle the "insured" is "occupying" at the time of an "accident".
>
> **13.** The parties stipulate and agree that the law of New Mexico governs this case.

*Id*. at 2-3.

## LAW

Because summary judgment is a procedural consideration and governed under Rule 56 of the Federal Rules of Civil Procedure, and because Rule 56 is directly applicable and sufficient in coverage, the federal summary judgment standard applies notwithstanding the parties' stipulation that the law of New Mexico governs.[3] However, the substantive claims set forth by the parties shall be analyzed under state law. *See* Joint Statement of the Facts at 2-3 (citing of the Policy, Section F, Subsection 13).

While Defendant cites only to the New Mexico summary judgment standards, such a reference incorrectly places his claims within the procedural territory of state law. This Court shall instead apply the federal standards of summary judgment consistent with Rule 56, *Hanna v. Plumer*, 380 U.S. 460 (1965), and the *Erie* Doctrine. Accordingly, the Court shall view the facts set forth in the Plaintiff's and Defendant's Motions in the light most favorable to the applicable non-movant, resolve *all* factual disputes and reasonable inferences in the non-movant's favor, and

---

[3] Under New Mexico's choice of law rules, procedural issues are governed by the law of the forum, even if other substantive law is to be applied. *Nez v. Forney*, 109 N.M. 161, 162 (1989); *Resolution Trust Corp. v. Ocotillo West Joint Venture*, 840 F.Supp 1463, 1478 (1993) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)). Where a federal procedural rule applies to issues otherwise designated as within the coverage of state law, the federal rule is applied unless it is not sufficiently broad to control the issue (in this case, summary judgment), or by its nature the rule can operate alongside the state rule. *Garman v. Campbell County Sch. Dist. No. 1*, 630 F.3d 977, 983 (10th Cir. 2010). The Tenth Circuit has further found that "[t]he propriety of summary judgment in federal diversity cases must be evaluated in light of the Federal Rules of Civil Procedure rather than state procedural law but with reference to the state's substantive law." *See Am. Mech. Sols., L.L.C. v. Northland Process Piping, Inc.*, 184 F. Supp. 3d 1030, 1060 n. 13 (D.N.M. 2016) (citing *C.F. Braun & Co. v. Oklahoma Gas & Elec. Co.*, 603 F.2d 132, 133 n. 1 (10th Cir. 1979); *Hanna v. Plumer*, 380 U.S. 460 (1965)).

grant summary judgment if one such party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Galbreath v. City of Oklahoma City*, 568 F. Appx. 534, 537 (10th Cir. 2014).

## ANALYSIS AS TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I.     Plaintiff's Coverage Under the Policy

Defendant contends that Plaintiff is not entitled to uninsured motorist coverage under his employer's auto policy because Plaintiff does not fall within the three classes of insured persons set forth in § 66-5-301—(1) Class One: the named insured and the members of a named insured's household, (2) Class Two: persons injured while occupying an insured vehicle, and (3) Class Three: persons who sustain consequential damages as a result of personal injuries sustained by persons who are "Class One" or "Class Two" insureds—and because "[n]o New Mexico court has ever found coverage under circumstances anything like those here, where the victim never was 'occupying' a covered auto during the relevant period, and where the [d]efendant John Doe only used his vehicle as a get-away car after causing an injury that had nothing to do with the subject vehicle." Doc. 19 at 4. Plaintiff contends that he *is* entitled to coverage under the Policy because New Mexico prefers to treat the uninsured motorist statute, N.M.S.A. 1978 § 66-5-301, liberally, as to compensate those who are injured through no fault of their own. *Chavez v. State Farm Mut. Auto. Ins. Co.*, 87 N.M. 327, 329-330 (1975) (finding that the only limitations on protection are those specifically set forth in § 66-5-301, which provides that the insured be legally entitled to recover damages and that the negligent driver be uninsured, and therefore holding that an exclusion which would not provide coverage to an insured while occupying a vehicle not insured under the policy was deemed invalid because it was not the statutory intent to limit coverage for an insured to a particular location or a particular vehicle); Doc 22 at 4.

There is a relative dearth of New Mexico law that clearly guides this Court as to the outer limits of Class One, Class Two and Class Three coverage, but as the Defendant notes, *Phoenix Indem. Ins. Co. v. Pulis* defined Class One insureds as a named insured and his or her spouse or household relatives and Class Two insureds as any person occupying an insured motor vehicle. 129 N.M. 395, 398 (2000); *see also Konnick v. Farmers Ins. Co.*, 103 N.M. 112, 115 (1985). The court in *Pulis*, however, also found the objective of New Mexico insurance law was "to protect individual members of the public against the hazard of culpable uninsured motorists," and that "[c]ases involving uninsured motorist coverage must be given a qualitatively different analysis by [the] court than cases which do not involve such coverage." *Id*. (citing *Romero v. Dairyland Ins. Co*., 111 N.M. 154, 156 (1990); *Padilla v. Dairyland Ins. Co*., 109 N.M. 555, 558 (1990)) (internal quotations omitted).

In stipulating a qualitatively different analysis as to cases involving such injuries and requiring a liberal interpretation of relevant insurance statutes for purposes of protecting members of the public against the hazard of culpable uninsured motorists, and in applying such a qualitatively different and substantively malleable standard to what appears to be a concisely written statutory scheme, the New Mexico Supreme Court has indicated a clear desire for determinative flexibility in cases where an individual is wrongfully injured by an uninsured motorist without recourse. In other words, the objective of New Mexico insurance law to protect against the public hazard of uninsured drivers, may, in some circumstances, supersede more obvious readings of the statutory language. The Court recognizes that this principle has found footing in appellate opinions of the New Mexico Court of Appeals and the New Mexico Supreme Court. Keeping this principle in mind, the Court rejects Defendant's claim that Plaintiff lacks coverage for the following reasons.

### A. Whether Plaintiff is a named insured or has supplemental coverage under the Policy is a dispute of material fact.

As Plaintiff notes in his response to Defendant's Motion, the record is unclear as to whether Plaintiff is named in the Policy as an insured party or has supplemental coverage. It is conceivable, particularly because the Policy is held by the Albuquerque Housing Authority, an entity with employees who operate company vehicles, that Plaintiff is among those explicitly named as insured in the Policy. Whether or not he is a named insured is determinative of a Class One classification under § 66-5-301, which would certainly elevate, if not substantiate, Plaintiff's claims as to entitlement of damages. Because the record is unclear on this matter, and because Defendant asserts in so few words that Plaintiff is not insured and Plaintiff appears not to know whether he is insured under the Policy or have access to documentation evidencing the same, there is a genuine dispute as to a material fact. *See* Fed. R. Civ. P. 56. This is particularly true under Tenth Circuit precedent, which requires the Court to resolve factual disputes and reasonable inferences in favor of the non-movant, which, as it relates to Defendant's Motion, is the Plaintiff. *Galbreath*, 568 Fed. Appx. at 537.

Defendant disagrees, citing Rule 56(c)(1)(A), which states that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by. . .citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Defendant likens Plaintiff's arguments as to the disputed fact of his coverage to a last-minute barrier-erecting attempt under the summary judgment standard. This may be true, but that does not make the assertion patently incorrect. In fact, the requirements under Rule 56(c)(1)(A) include reference "to other materials," and it appears from the record that Plaintiff is making clear reference to the Policy itself and questioning whether

7

Mr. Almager, or perhaps more broadly, company employees generally, are listed anywhere therein as direct beneficiaries under the Policy. The Policy is not set forth in its entirety on the record, but on motion for summary judgment, the Court will not speculate as to its contents nor the reasonability that a textual element of the Policy clarifies specified insureds other than what is set forth in the Policy's Section B. It is simply a factual dispute at this juncture, and so the Court is reluctant to grant the Motion.

This finding is not all that important as to the Court's ruling on Defendant's Motion. Of more importance is the Rule 56 requirement that the Court shall grant summary judgment if the Defendant shows that there is no genuine dispute as to any material fact *and the movant is entitled to judgment as a matter of law*. For the reasons set forth below, Defendant has shown no such entitlement.

### B. Strict interpretation of the word "occupying" under the Class Two classification of § 66-5-301 may run afoul of statutory intent.

The most obvious reason to deny Defendant's Motion is the New Mexico Supreme Court's position on the statutory intent of § 66-5-301, which is to "protect individual members of the public against the hazard of culpable uninsured motorists." Based on this position, as well as the facts at bar and a review of the applicable case law, the Court finds Defendant is not entitled summary judgment as a matter of law.

The Class Two classification under § 66-5-301 includes persons injured while occupying an insured vehicle. The question arises as to whether Plaintiff can be considered to have "occupied" the vehicle when he used it in the course of his employment and attempted to prevent the vehicle from being stolen, but was not physically inside the vehicle when the injury occurred.

Defendant states that there is no New Mexico case law addressing such an incident, and cites to various New Mexico cases that found proper "occupancy" was not achieved, either based

8

solely on proximity to the relevant covered vehicle or an insufficient causal relationship between an injurious action by an uninsured driver and the plaintiff's occupation of his own insured vehicle. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Baldonado*, 134 N.M. 197, 201-02 (N.M. Ct. App. 2003); *Allstate Ins. Co. v. Graham*, 106 N.M. 779, 780 (1988). These cases are not analogous; none presented a clear nexus between the plaintiff's exposure to harm and a transaction oriented to the use of the insured vehicle. Moreover, if the facts in these cases supported the presence of such a transaction, the courts most certainly would have found the plaintiffs to be "occupying" the vehicle and thereby covered as a Class Two insured. *See, e.g., Graham*, 106 N.M. at 780 ("We hold that Graham was simply not engaged in a transaction oriented to the use of the 1976 Ford at the time of the accident."). Defendant, however, overlooks the cases that *did* present a sufficient transaction, in some instances very similar to the facts at bar. Specifically, *this* Court has applied New Mexico law to rule on a properly analogous case in which a plaintiff's injury resulted from a transaction oriented to the use of a covered vehicle. In *Newkirk v. Zurich Am. Ins. Co.*, plaintiff Newkirk, in the course of his employment, was traveling in the commercial vehicle of his insured employer. 2008 WL 11322910 (D.N.M. 2008 Jan. 10, 2008) (unpublished). He decided to stop at a gas station to clean the vehicle windshield. *Id*. at *2. Parking a short distance from the fuel island of the station, Newkirk entered the store in search of washer fluid. *Id.* Inside, Newkirk encountered an employee who offered to refill the washer fluid container for Newkirk. *Id*. While the employee filled the fluid container outside, Newkirk remained inside to purchase coffee and a box of donuts, and while he was paying for the items, a car drove through the wall of the gas station store, striking and ultimately paralyzing Newkirk. *Id*.

Citing the broad remedial purpose of § 66-5-301, this Court found that Newkirk was occupying the covered vehicle at the time of his injury. *Id*. at *5-6. In so doing, the Court explained

that Newkirk's actions in the store were oriented to the use of the covered vehicle under the test articulated in *Cuevas v. State Farm Mut. Auto. Ins. Co.*, 130 N.M. 539, 542 (2001) because Newkirk's entering of the gas station was to facilitate his use of the commercial vehicle later. *Newkirk*, 2008 WL 11322910, at *5.

The Court believes this framework is most suitable in deciding whether Plaintiff was "occupying" the vehicle under New Mexico law, *see Graham*, 106 N.M. at 780 (testing whether the transaction surrounding the injury was oriented to the use of the covered vehicle in determining "occupancy," rather than testing physical proximity to the vehicle), and so applies the test here. The test requires New Mexico courts to consider a variety of factors, such as (1) the connection between the plaintiff and the covered vehicle, (2) the intention of the plaintiff, (3) the proximity of the plaintiff to the covered vehicle at the time of the accident, and (4) whether the claimant was engaged in a transaction essential to his use of the vehicle. *Newkirk*, 2008 WL 11322910, at *4 (citing *Utica Mut. Ins. Co. v. Contrisciane*, 504 Pa. 328 (1984)).

Plaintiff Almager satisfies these criteria consistent with the test's application under New Mexico law. (1) The connection between Plaintiff and the covered vehicle is strong; Plaintiff was responsible for the vehicle and used it to conduct the duties of his employment, he was employed by the entity for which Defendant claims the Policy was written, and he relied on the vehicle for transportation either away from the job site or to the next job site. (2) The intention of the Plaintiff is also clear; on behalf of his employer, he attempted to stop the theft of his vehicle and his means of exiting the scene. (3) There is, in fact, an even stronger connection to the vehicle here than there was in *Newkirk*, as Newkirk was struck by an uninsured vehicle while standing inside a gas station store to purchase donuts far away from his covered vehicle. (4) Finally, Plaintiff was certainly involved in a transaction essential to the use of the covered vehicle, for if it was stolen, neither he

nor his employer would be able to continue using the vehicle, and importantly, he would have no ability to use the vehicle to leave the job site or continue to the next job site. Accordingly, the Court finds that Plaintiff was "occupying" the vehicle as the term has been interpreted under New Mexico law consistent with the requirements of § 66-5-301.

**II.     Ownership, maintenance, or use of an uninsured motor vehicle**

Defendant's Motion next charges the Court with determining whether Plaintiff's injuries arose out of the "ownership, maintenance, or use" of the get-away car. To be clear, Plaintiff's claim against Defendant hinges upon his relationship to the *covered* vehicle for purposes of establishing his status as an insured, and thus his own right to seek damages under the Policy as explained above. However, the claim likewise hinges upon the relationship of the injury to the *uninsured* vehicle for purposes of the Policy's applicability to the incident. The Policy's Section (A)(1)(b) requires that the liability for the damages incurred by the uninsured motorist—the John Doe assailant and his accomplice—result from the "ownership, maintenance, or use" of the uninsured vehicle. Defendant contends that under *Britt v. Phoenix Indemnity*, the shooting had no such relationship to the get-away car. 120 N.M. 813, 818 (1995).

The New Mexico Supreme Court in *Britt* employed a three-part analysis under which a court must first consider whether there is a sufficient causal nexus between the injury suffered by a plaintiff and the use of the uninsured vehicle. *Id*. Next, in event such a nexus is found, a court considers whether there was an "act of independent significance" which broke the causal link between the injury and the use of the uninsured vehicle. Finally, a court considers whether the use of the vehicle was normal use. For example, "transportation would be a normal use, whereas use of a parked car for a gun rest would not be." *Id*. at 819 (citing *Continental Western Ins. Co. v. Klug*, 415 N.W.2d 876, 878 (Minn. 1987)).

Defendant cites to the above-mentioned *Britt* factors to support its motion, but the Court is perplexed as to why. Yes, *Britt* sets forth various requirements which Defendant claims are not established by Plaintiff, but an elementary review of the facts of *Britt* and the court's use of said facts in the analysis reveals that the shooting in the instant case falls quite squarely within *Britt*'s parameters.

In *Britt*, the plaintiff was the passenger in a vehicle that was struck from behind by another vehicle. *Id*. at 814. Though there was damage to the vehicle in which Plaintiff Britt was riding, there was no injury to him or the driver. *Id*. Britt exited the vehicle to assess the damage and found himself consequently involved in a confrontation with the two male drivers of the other vehicle (whose identities were never discovered, and thus, they were "uninsured"). *Id*. Britt returned to his vehicle, and the two drivers followed him, ultimately stabbing him through the window. *Id*. The insurance policy that covered Britt's vehicle provided for uninsured motorist coverage and included language substantively similar to the language of the Policy at issue in the instant case, namely, (1) that coverage was extended to accidents arising from the "ownership, maintenance or use" of the uninsured motor vehicle and (2) that claimants on the policy must be legally entitled to recover from the operator of the uninsured vehicle. *Id*. at 814-15. The Court will review both (1) and (2), addressing the latter first.

### A. Legal Entitlement to Recover

Foundational to common law negligence is that liability is predicated upon fault. *See id*. at 817. The clear language of the Policy ties Defendant's duty under the Policy to the fault of John Doe or his accomplice. Moreover, New Mexico courts have found that entitlement to recover in similar insurance disputes arises from substantive law, not from the uninsured motorist statute or the Policy. *See State Farm Auto. Ins. Co. v. Ovitz*, 117 N.M. 547, 549 (1994). Principles of fault

are part and parcel to substantive tort law in New Mexico. Were John Doe known and present for service of process, his shooting of Plaintiff would satisfy the liability requirements under the common law as well as the contractual requirement that Plaintiff be legally entitled to damages from the uninsured driver. This hypothetical is particularly relevant in ruling on Defendant's motion for summary judgment, when any factual disputes must be decided, and reasonable inferences drawn, in favor of the Plaintiff.

To the extent Defendant may argue that the woman in the get-away car was the uninsured vehicle's owner, and not the John Doe assailant, thereby muddying the waters with misdirection or vicarious liability, there is an issue of fact that requires the Court to infer, in favor of Plaintiff, that the John Doe assailant was the owner or an authorized user of the uninsured vehicle. Further, the woman in the get-away car, by virtue of encouraging the assailant to shoot Plaintiff and leaving with the assailant after the commission of the crime, is similarly liable under New Mexico law, or an avenue of vicarious liability imputed on the woman vis-à-vis the shooting and her role therein would be enough to meet the liability requirements under the Policy. The New Mexico Supreme Court found in *Chavez v. State Farm Mut. Auto. Ins. Co.* that the only limitations on protections for such a plaintiff are those specifically set forth in § 66-5-301, which provides that an insured be legally entitled to recover damages and that the party from whom the insured seeks to recover damages be uninsured. 87 N.M. 327, 329-30 (1975). Accordingly, the connection between the Plaintiff and either of the unknown assailants may alone be sufficient to garrison Plaintiff's claims because the Plaintiff would certainly be entitled to damages from John Doe and/or the female accomplice.

### B. "Use" of the Uninsured Motor Vehicle

Now, with regard to the uninsured assailant's "use" of the get-away car and establishing a sufficient nexus between the shooting and Plaintiff's injuries, the Court finds *Britt* quite compelling. First, the court in *Britt* did in fact conclude that there may well have been "a sufficient causal link between the use of the uninsured vehicle for transportation and Britt's injuries." 120 N.M. at 819. The Tenth Circuit has also found transportation sufficient to establish that a vehicle is an "active accessory" in a shooting on the basis that a vehicle empowers an assailant to unsuspiciously approach a target, hide a firearm and the assailant's identity, and quickly flee the scene after a crime has been committed. *State Farm Mut. Auto. Ins. Co. v. Blystra,* 86 F.3d 1007, 1011-12 (10th Cir. 1996). As Plaintiff correctly states, *Britt* does not require absolute certainty as to whether the injury would or would not have occurred absent use of the uninsured vehicle; it merely requires that the vehicle itself contribute to the harm inflicted upon Plaintiff.

Defendant contends, however, that several elements of the interaction between Plaintiff and John Doe are acts of independent significance that break the causal chain between the injury and the use of the uninsured vehicle. *See Britt*, 120 N.M. at 819. It is true, in *Britt*, a confrontational interaction between the victim and the assailants satisfied the court that the nexus had been "cut off" by intervening forces, shifting the role of the uninsured vehicle in the interaction further away from the podium of causation. This is because, as the court stated, complicity in the accident, that is, whether the assailants intended to hit the covered vehicle with their uninsured vehicle, was determinative of whether the vehicle was used as a direct avenue to the attack or whether the interaction between the victim and the assailants intervened and caused the stabbing. *Id*. If the assailants intended to hit the covered vehicle, the court reasoned, it is presumable that they

14

intended to hurt the victim even before the interaction, in which case the car was an instrument to their intention. *Id*.

This Court is not convinced that the interaction between Plaintiff and John Doe, nor the instructions given by the woman to John Doe to "take care" of Plaintiff, were intervening acts sufficient to sever the causal chain binding the vehicle to Plaintiff's injury for two reasons. First, consistent with *Britt*, John Doe's intentions when deciding to steal the vehicle are unclear, and such factual ambiguities must be resolved in the favor of the non-movant. *See Galbreath*, 568 Fed. Appx. at 537. It cannot be said with any certainty that John Doe's plan was not to steal a vehicle *and* kill anyone who stood in his way. John Doe possessed a firearm during the commission of the crime. This fact is sufficient to link the attempted theft, facilitated by the get-away car, to the shooting. Second, this case is distinguished from *Britt* because Plaintiff's tackling of John Doe was not an example of unwarranted street-side rage,[4] but rather an endeavor by Plaintiff, incentivized by actions taken by John Doe and supplemented with the availability of the get-away vehicle, to secure Plaintiff's own use of the covered vehicle and his means either to continue his duties or to escape from the altercation, means which may have been thwarted by the positioning of the get-away car. Under either analysis, the get-away car is a vital feature to Plaintiff's injury, and the "use" of the vehicle is inseparable from the shooting, particularly when inferences are drawn in Plaintiff's favor.

Defendant notes examples whereby New Mexico courts have found simple transportation not sufficient to render an uninsured vehicle instrumental in causing an injury, the most compelling of which is *Hartford v. Tollardo*, 409 F. Supp. 2d 1301, 1303 (D.N.M. 2005). In *Hartford*, as Defendant contends, a so-called "gang leader," Perea, used his pickup truck to search for a drug

---

[4] For an example of street-side rage better illustrating the severing of an assailant's initial intent from the violent aftermath, see *Farmers v. Sedillo*, 129 N.M. 674 (N.M. Ct. App. 2000).

dealer. Doc. 19 at 6. After finding this drug dealer, Perea exited his vehicle, walked over to the drug dealer and shot him. *Id*. Nonetheless, the court found that the truck was not an active accessory to the incident and therefore there was no causal nexus between the use of the truck and the harm suffered by the victim. *Id*.

In Defendant's Motion, however, Defendant fails to mention the facts that clearly distinguish *Hartford* from the facts of this case. Of these distinctions, it is important to note that Perea did not find the drug dealer while he was searching for him with his vehicle; Perea had given up searching for the drug dealer and simply happened upon him at a gas station while Perea was on his way home. *Hartford*, 409 F. Supp. 2d at 1305. Perea stopped his car across the street from the gas station "instead of pulling up beside the victim[]," walked over to the gas station, and shot the drug dealer. *Id*. The court reasoned that the truck was not an accessory to murder specifically because "Perea was not employing his truck for anything as dramatic as murder, but for something much more prosaic: returning to his apartment." *Id*.

In contrast to *Hartford,* in the instant case the John Doe assailant never abandoned the uninsured vehicle while attempting to steal the covered vehicle and then shooting Plaintiff. John Doe approached the covered vehicle, which he intended to steal, using the get-away car. It was parked in a manner that allowed the passenger to operate as a lookout during the theft and provided a means of expeditious escape in event of failure. Thus, a reasonable inference can be drawn that the get-away car was an important feature of the plan to steal the covered vehicle, and this inference is bolstered by the fact that the get-away car remained on the scene during the attempted theft and shooting. This is significant because both parties have conceded that there was another person in the get-away car during the theft, and that John Doe was attempting to steal the covered vehicle, not that he was merely trying to steal *from* the covered vehicle. Doc. 19 at 2; Doc. 20 at 3.

Consequently, if the get-away car was not an "active accessory" to the crime, the crime but for which Plaintiff would not have been shot, then for what purpose did the get-away car remain on the scene? In other words, why didn't the woman drive off with it? There are only two realistic answers to this question. One, the team of thieves expected the possibility of failure, and thus the woman remained to help John Doe escape if he was unable to steal the covered vehicle. Two, the team of thieves was confident in John Doe's ability to leave with the covered vehicle, in which case the fact that the get-away car remained on the scene was either to enable the woman to act as a lookout during the theft or to block the covered vehicle's exit from the parking lot until John Doe was able to drive away with it. Had the woman driven off when Plaintiff encountered John Doe attempting to steal the car, perhaps the analysis would be different. However, she did not; the get-away car remained until after Plaintiff was shot, and thus its purpose was likely to allow John Doe a means of escape, which may have emboldened him to shoot Plaintiff.

Accordingly, the Court finds not only that the federal standards for granting summary judgment as to Defendant's Motion are not met, but that it is also virtually inconceivable that the get-away car was not an active accessory in both the attempted theft of the covered vehicle *and* the consequent shooting of Plaintiff. There was no intervening act severing the causal link between the use of the get-away car and the shooting. Moreover, John Doe and his accomplice used this uninsured vehicle as a scouting and get-away car at the very least. Due to the insufficiency of Defendant's contentions, which fail to show an entitlement to judgment as a matter of law, Defendant's Motion for Summary Judgment is **DENIED**.

### ANALYSIS AS TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

As explained above, Plaintiff asserts that he was an occupant of the covered vehicle, thereby insured under the Policy, and was injured as a result of the use of the get-away car by

17

uninsured drivers. Plaintiff relies on the language of § 66-5-301 and the New Mexico Supreme Court's interpretation and application of this statute in controlling opinions herein cited. However, as Defendant notes, Plaintiff makes no argument in its motion that he was actually insured at the time of the shooting. In fact, Plaintiff's first claim as to coverage under the Policy's Section B is set forth in Plaintiff's response to Defendant's Motion. *See* Doc. 22. Under Tenth Circuit precedent, Plaintiff has therefore relinquished the argument that he was an insured under the Policy as it relates to his motion for summary judgment. *See Brubach v. City of Albuquerque*, 893 F. Supp. 2d 1216, 1237 n.6 (D.N.M. 2012) (citing Tenth Circuit authority stating that arguments raised for the first time in a reply brief are not considered); *see also Taylor v. United Management, Inc.*, 51 F. Supp. 2d 1212, 1215 n.2 (D.N.M. 1999). Under this framework, Defendant is correct in noting that, at this time, Plaintiff cannot meet his burden of proof as required by Rule 56.

However, it appears both parties have stated a preference that this case be resolved through summary judgment. *See* Doc. 20 at 8 ("The parties agree that this issue is properly resolved by way of summary judgment."). To accommodate this goal, the Court turns to *Beaird v. Seagate Tech., Inc.*, which allows the Court, in the event a party's reply contains new arguments or material, to either refrain from relying on the new material or argument in ruling on the motion, or to permit a surreply. 145 F.3d 1159 (10th Cir. 1998). While a surreply seems wholly irrelevant here, as the Court's reasoning as to Plaintiff's "occupancy" of the covered vehicle is explained thoroughly above with reference to Defendant's arguments as well as to *Newkirk v. Zurich Am. Ins. Co*., the Court must nonetheless afford Defendant an opportunity to reply to Plaintiff's position in the context of Plaintiff's Motion. *Beaird,* 145 F.3d at 1164; *Doebele v. Sprint/United Management Co.,* 342 F.3d 1117, 1129-31 (10th Cir. 2003). Accordingly, the Court hereby grants Defendant **fourteen (14) days** to file a surreply to Plaintiff's claim of coverage under the Policy as set forth

in Plaintiff's reply to Defendant's summary judgment motion (Doc. 22), provided that any such surreply shall be limited to the issue raised by Plaintiff that at the time he was shot, he was an insured under the Policy on the covered vehicle. After Defendant files its surreply to Plaintiff's claim of coverage, the Court will issue its ruling on Plaintiff's Motion.

## CONCLUSION

The Plaintiff was the victim of an attempted theft of an insured vehicle entrusted to him by his employer, and following his efforts to prevent the theft of said vehicle, he was shot by John Doe who has not yet been identified or arrested. As a result of this tragic incident, Plaintiff has sustained serious injuries that may well remain with him for the rest of his life. Plaintiff's interaction with the assailant was certainly a transaction oriented to his use of the covered vehicle, and the use of the uninsured get-away vehicle was central to the underlying attempted theft of the covered vehicle as well as the shooting. The unknown woman's use of the get-away car during the course of this incident illustrates its lingering importance to, *inter alia*, the assailant's escape from the scene, and more specifically, the shooting.

Defendant Philadelphia Indemnity Insurance Company has failed to show its entitlement to summary judgment as a matter of law. Accordingly, Defendant's Motion is **DENIED**.

Plaintiff Almager did not properly assert his coverage under the Policy in his own motion, and therefore the Court will delay ruling on Plaintiff's Motion until Defendant files a surreply in accordance with the requirements and time limits set forth in this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE