# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

ARTURO ALMAGER,

      Plaintiff,

vs.                                                  No. 1:20-cv-00368-WJ-LF

JOHN DOE, UNINSURED DRIVER, and
PHILADELPHIA INDEMNITY INSURANCE COMPANY,

      Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court following the May 26, 2021 hearing on Plaintiff Almager's Motion for Summary Judgment (Doc. 20). Plaintiff claims entitlement to uninsured motorist coverage under an insurance policy issued by Defendant Philadelphia Indemnity Insurance Company to the Albuquerque Housing Authority (the "Policy"), on the grounds that Plaintiff is covered under the Policy and the gunshot wounds inflicted upon Plaintiff by the John Doe assailant arose from the operation, maintenance or use of an uninsured motor vehicle. Defendant maintains in its Surreply in Opposition to the Motion (the "Surreply") that Plaintiff is not "insured" under the Policy and reiterates its arguments that Plaintiff is not legally entitled to damages under the law. For the reasons set forth in this Memorandum Opinion and Order, as well as the Court's Memorandum Opinion and Order Denying Defendant's Motion for Summary Judgment and Order for Surreply on Plaintiff's Motion for Summary Judgment, filed December 4, 2020 (Doc. 26) (the "December Order" or "Order"), the Court hereby **GRANTS** Plaintiff's Motion.

## BACKGROUND

On November 28, 2018, Plaintiff, an employee of the Albuquerque Housing Authority, was working at a location operated by his employer. Joint Set of Stipulated Facts (the "Joint

Stipulated Facts" or "stipulated facts"), Doc. 18 at 1. While inside, Plaintiff observed John Doe attempting to steal Plaintiff's company vehicle (a Dodge Ram) (the "insured vehicle" or "covered vehicle") from the parking lot. Plaintiff left the building and confronted John Doe to halt the attempted theft, ultimately tackling him to the ground. *Id*. At the time of the attempted theft, another vehicle (a white Kia Optima or Hyundai Elantra) (the "get-away car" or "uninsured vehicle") was parked near the Dodge Ram. *Id.* at 2. A woman then exited the get-away car and said to John Doe: "take care of him," referring, of course, to the Plaintiff. *Id*. John Doe then shot the Plaintiff two times, returned to the get-away car with the woman, and fled. Neither John Doe nor the woman have been identified or arrested. *Id*.

As a result of the gunshot wounds, Plaintiff sustained significant injuries[1] and requested $1,000,000 from Defendant insurance company. *Id*. Defendant denied Plaintiff's claim, alleging that Plaintiff was not insured under the Policy at the time of the incident, that Plaintiff was not "occupying" a covered "auto" at the time of the incident, and that Plaintiff's injuries did not result from the ownership, maintenance or use of the uninsured motor vehicle or the get-away car.[2] *Id*.

The Policy contains a form (CA 31 29 10 13) titled "New Mexico Uninsured Motorists Coverage – Nonstacked," which includes the following relevant provisions as set forth in the Joint Stipulated Facts:

---

[1] Plaintiff Almager sustained extensive physical damage to his lower abdomen and spine, including spermatic cord hematoma. Doc. 1-1 at 4. He underwent surgery and experienced pain, with multiple hospital visits, over the course of several months, and underwent physical therapy for nearly a year. *Id*. at 4-5. Following the medical procedures, Plaintiff sustained long-term injury, including degenerative changes and disc misalignment in his back, as well as metallic fragments near or in the spine, severe pain and muscle spasms, permanent disfigurement, physical damage, pain and dysfunction. *Id*. at 4-7. Plaintiff now seeks damages for current and future impairment, medical expenditures, pain and suffering, loss of enjoyment of life, lost wages, compensatory damages and punitive damages. *Id*. at 7.

[2] Hit-and-run drivers, including drive-by shooters who did not physically "hit" an insured with an unknown vehicle, are considered "a specie of uninsured motorist" so long as, *inter alia*, the *use* of the unknown vehicle (in this case, the get-away car) causes bodily injury to an insured. *See State Farm Mut. Auto. Ins. Co. v. Luebbers*, 138 N.M. 289, 293 (N.M. Ct. App. 2005). The Policy's "cause bodily injury with no physical contact" language is consistent with the above law. *See* Doc. 18 at 3.

**A.     Coverage**

    **1.**     We will pay all sums the "insured" is legally entitled to recover as damages from the owner or driver of an "uninsured motor vehicle" because of:

        **a.**     "Bodily injury" sustained by an "insured" and caused by an "accident"; or
        **b.**     "Property damages" caused by an "accident."

    The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle."

**B.     Who Is An Insured**

    If the Named Insured is designated in the Declarations as:

    **2.**     A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

        **a.**     Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto".[3]
        **b.**     Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".
        **c.**     The Named Insured for "property damage" only.

**F.     Additional Definitions**

    **4.**     "Uninsured motor vehicle" means a land motor vehicle or "trailer":

        **d.**     That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must either:

            **(1)**     Hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying"; or
            **(2)**     Cause "bodily injury" or "property damage" with no physical contact with an "insured", a covered "auto" or a vehicle the "insured" is "occupying" at the time of an "accident".

    **13.**     The parties stipulate and agree that the law of New Mexico governs this case.

Doc. 18 at 2-3.

---

[3] The Court notes additional language in Section B(2)(a) of the policy, but both parties submitted during the Hearing that this language is not relevant to the Court's determination. For this reason, the Court does not infer any limitation on the applicability of Section B(2) from this redacted language, and does not analyze it here.

3

Both parties motioned the Court for summary judgment on July 31, 2020. *See* Docs. 19 & 20. The Court analyzed both motions in its December Order, ultimately denying Defendant's motion and delaying the disposition of Plaintiff's motion until such time as Defendant filed a surreply pursuant *Beaird v. Seagate Tech., Inc.* and consistent with the parties' shared desire to resolve this case at the summary judgment stage of the proceedings. 145 F.3d 1159 (10th Cir. 1998) (permitting a court to consider new arguments or material when the applicable counterparty is allowed surreply); *see also* Doc. 20 at 8 ("The parties agree that this issue is properly resolved by way of summary judgment."); Doc. 26 at 18.

Defendant filed the Surreply on January 8, 2021. *See* Doc. 30. Therein, Defendant argues that Plaintiff did not occupy the covered vehicle under the Policy, but also questions the Court's findings that Defendant's injuries arose from the "use" of an uninsured vehicle. The Surreply therefore exceeds the bounds described by the Court in its December Order, but the arguments contained therein will be discussed briefly below.

**LAW**

A. <u>Summary Judgment</u>

Because summary judgment is a procedural consideration and governed under Rule 56 of the Federal Rules of Civil Procedure, and because Rule 56 is directly applicable and sufficient in coverage to the case at hand, the federal summary judgment standard applies notwithstanding the parties' stipulation that the law of New Mexico governs.[4] However, the substantive claims set

---

[4] Under New Mexico's choice of law rules, procedural issues are governed by the law of the forum, even if other substantive law is to be applied. *Nez v. Forney*, 109 N.M. 161, 162 (1989); *Resolution Trust Corp. v. Ocotillo West Joint Venture*, 840 F.Supp 1463, 1478 (1993) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)). Where a federal procedural rule applies to issues otherwise designated as within the coverage of state law, the federal rule is applied unless it is not sufficiently broad to control the issue (in this case, summary judgment), or by its nature the rule can operate alongside the state rule. *Garman v. Campbell County Sch. Dist. No. 1*, 630 F.3d 977, 983 (10th Cir. 2010). The Tenth Circuit has further found that "[t]he propriety of summary judgment in federal diversity cases must be evaluated in light of the Federal Rules of Civil Procedure rather than state procedural law but with reference to the state's substantive law." *See Am. Mech. Sols., L.L.C. v. Northland Process Piping, Inc.*, 184 F. Supp. 3d 1030, 1060 n. 13 (D.N.M. 2016) (citing *C.F. Braun & Co. v. Oklahoma Gas & Elec. Co.*, 603 F.2d 132, 133 n. 1 (10th Cir. 1979); *Hanna v. Plumer*, 380 U.S. 460 (1965)).

forth by the parties shall be analyzed under state law. *See* Doc. 18, Joint Statement of the Facts at 2-3 (citing the Policy, Section F, Subsection 13).

The Court shall therefore apply the federal standards of summary judgment consistent with Rule 56, *Hanna v. Plumer*, 380 U.S. 460 (1965), and the *Erie* Doctrine. The federal summary judgment standard requires the Court to view the facts in the light most favorable to the non-movant, resolve factual disputes and *reasonable* inferences in the non-movant's favor, and grant summary judgment if one such party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Galbreath v. City of Oklahoma City*, 568 F. Appx. 534, 537 (10th Cir. 2014). On summary judgment, though the Court must draw all factual inferences in favor of the nonmovant, those inferences must be "reasonable." *Deherrera v. Decker Truck Line, Inc.*, 820 F.3d 1147, 1159 (10th Cir. 2016) (internal quotations and citations omitted). And where only one inference may be drawn from the undisputed facts, summary judgment is proper. *Id*. (citing *Empire Elecs. Co. v. United States*, 311 F.2d 175, 180 (2d Cir.1962)).

B. *Cuevas v. State Farm Mut. Auto. Ins. Co.*

The facts in *Cuevas*, as stipulated by the parties in that case, show that a tire on the plaintiff's car became flat while he was driving, and that plaintiff moved the vehicle to the side of the highway. 130 N.M. 539 (Ct. App. 2001). The car did not have a spare tire, so plaintiff hitched a ride to his mother's house to retrieve one. When he returned with the spare tire, in the process of changing the tire, he was struck by an uninsured motorist. Indeed, when he was hit, the plaintiff was retrieving the tire from an entirely separate vehicle, not the insured vehicle. Nonetheless, the Court of Appeals found that the exercise of retrieving and changing the tire in this instance satisfied the transaction-oriented majority approach to resolving these issues under New Mexico law because the plaintiff was "engaged in a transaction related to the use of the insured car." *Id*. at 542.

The Court of Appeals in *Cuevas* reversed the trial court's finding that the plaintiff did not "occupy" the insured vehicle at the time of the accident. *Id*. at 543.

    C.  *Newkirk v. Zurich Am. Ins. Co.*

In *Newkirk v. Zurich Am. Ins. Co.*, 2008 WL 11322910 (D.N.M. 2008 Jan. 10, 2008) (unpublished)), plaintiff Newkirk, in the course of his employment, was traveling in the commercial vehicle of his insured employer. *Id*. He decided to stop at a gas station to clean the vehicle windshield. *Id*. at *2. Parking a short distance from the fuel island of the station, Newkirk entered the store in search of washer fluid. *Id*. Inside, Newkirk encountered an employee who offered to refill the washer fluid container for Newkirk. *Id*. While the employee filled the fluid container outside, Newkirk remained inside to purchase a box of donuts and coffee, and while he was paying for the items, a car drove through the wall of the gas station store, striking and ultimately paralyzing Newkirk. *Id*.

Citing the broad remedial purpose of § 66-5-301, this Court found that Newkirk was occupying the covered vehicle at the time of his injury. *Id*. at *5-6. In so doing, the Court explained that Newkirk's actions in the store were oriented to the use of the covered vehicle under the test articulated in *Cuevas*, 130 N.M. at 542, because Newkirk's entering of the gas station was to facilitate his use of the commercial vehicle later. *Newkirk*, 2008 WL 11322910, at *5. This framework is most often employed by New Mexico courts when deciding whether a plaintiff was "occupying" an insured vehicle under New Mexico law. *See Graham*, 106 N.M. at 780 (testing whether the transaction surrounding the injury was oriented to the use of the covered vehicle in determining "occupancy," rather than testing physical proximity to the vehicle). The test requires a court to consider a variety of factors, such as (1) the connection between the plaintiff and the covered vehicle, (2) the intention of the plaintiff, (3) the proximity of the plaintiff to the covered vehicle at the time of the accident, and (4) whether the claimant was engaged in a transaction

essential to his use of the vehicle. *Newkirk*, 2008 WL 11322910, at *4 (citing *Utica Mut. Ins. Co. v. Contrisciane*, 504 Pa. 328 (1984)).

## DISCUSSION

### I. Ordering Defendants to File Surreply was Appropriate.

Defendant begins its Surreply implying that the Court's decision to permit surreply, as opposed to denying Plaintiff's Motion outright, was inappropriate because Plaintiff failed to allege in his initial Motion that he was insured under the Policy at the time of the shooting. *See* Doc. 30 at 2. This was acknowledged in the Court's December Order, but the decision to permit surreply was ultimately made, in part, to accommodate the parties' shared desire to resolve this litigation at the summary judgment stage, and in part because the Court was not convinced that Plaintiff's failure to explicitly argue that he "occupied" the covered vehicle under the Policy is fatal in this context. Rather, Plaintiff did indeed submit that "he is entitled to coverage under the [Policy]," Doc. 20 at 2, and such entitlement requires Plaintiff to be an insured. Plaintiff follows this contention with facts that support a finding that he "occupied" the covered vehicle at the time of the incident, and concludes with a prayer for entry of a finding that he is entitled to the uninsured motorist benefits under the Policy. Doc. 20 at 9. The information and argument set forth in the Motion provides more than enough basis for a finding that Plaintiff was an insured at the time of the incident.

Moreover, that Plaintiff did not explicitly state that he was an "insured" appears to stem from a reasonable assumption that Plaintiff was covered under the Policy. As far as the Court can tell, Plaintiff merely decided not to commit resources to arguing something seemingly ancillary until Defendant characterized the issue as one of fundamental dispute. This is not to say that Plaintiff's status as an insured is not important. Indeed, if Plaintiff was not insured, there is no basis for summary judgment in his favor. However, that Plaintiff seemingly assumed his coverage

and believed that the Court would assume his coverage is quite reasonable because the Policy is an insurance contract purporting to cover property-related damages and bodily injuries, Doc. 18 at 2 ("We will pay all sums the 'insured' is legally entitled to recover as damages from the owner or driver of an 'uninsured motor vehicle[.]'"), and covers vehicles used by employees in the course of their employment duties, *see id*. at 1 ("While inside working, Mr. Almager became aware that a man . . . was attempting to steal his company vehicle from the parking lot . . . which was listed on the policy as a scheduled auto."). Notwithstanding the apparent obviousness of Plaintiff's coverage under the Policy's language, and that Plaintiff ultimately argued that he was covered under the Policy and thereby that he met the requirements of such coverage, the Court found that Plaintiff should have made his claim that he was "insured" under the Policy more clearly and earlier, as to afford Defendant an opportunity to further elaborate its contentions on the matter. *See Seagate*, 145 F.3d at 1159 (A court may consider new arguments when the applicable counterparty is allowed surreply.).

**II.      Plaintiff "Occupied" the Covered Vehicle.**

Defendant next reiterates its argument that Plaintiff is not an "insured" under the Policy's UM Endorsement. The relevant language of the UM Endorsement, as agreed by the parties, reads:

> **B. Who Is An Insured**
>
> If the Named Insured is designated in the Declarations as:
>
> **2.**   A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":
>
> **a.**   Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto".
>
> **b.**   Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".
>
> **c.**   The Named Insured for "property damage" only.

Doc. 18 at 2-3.

Those "insured" under the Policy include "[a]nyone 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.'" Doc. 18 at 2-3. Defendant claims in the Surreply that Plaintiff was not "occupying" the covered vehicle during the time of the shooting and offers a recitation of its previous arguments as to why. Plaintiff argues that he is entitled to coverage under the Policy, and during the hearing he referred to various cases cited in the Court's December Order which seem to reinforce his position.

The question presented here is whether Plaintiff can demonstrate that no material factual dispute undermines a finding that he qualifies as a Class 2 insured as a matter of law. This requires that Plaintiff be injured while "occupying" an insured vehicle under the Uninsured Motorist Statute, N.M.S.A. 1978 § 66-5-301, and in accordance with controlling New Mexico court decisions interpreting such statute. *See Phoenix Indem. Ins. Co. v. Pulis*, 129 N.M. 395, 398 (2000) (defining Class Two insureds as any persons occupying an insured motor vehicle); *see also Konnick v. Farmers Ins. Co.*, 103 N.M. 112, 115 (1985).

In a strictly textual sense, Plaintiff did not occupy the vehicle because he was outside of the vehicle when shot. However, many jurisdictions, including New Mexico, follow a more liberal interpretation of the statute. *See Pulis*, 129 N.M. at 398 (The objective of New Mexico insurance law is "to protect individual members of the public against the hazard of culpable uninsured motorists" and "[c]ases involving uninsured motorist coverage must be given a qualitatively different analysis by [the] court than cases which do not involve such coverage.") (citations omitted); *see also Cuevas*, 130 N.M. at 41, 43 (The approach "adopted in the majority of jurisdictions" is "broader and concerned with whether the person claiming benefits was performing an act (or acts) which is (are) normally associated with the immediate use of the vehicle . . . the purpose of [§§ 66–5–301 to 66–5–303] is to compensate those persons injured through no fault of their own.") (internal quotations, citations and alterations omitted).

As the Court noted in the December Order, in applying a more malleable standard to what appears to be a concisely written statutory scheme, New Mexico courts have indicated a clear desire for flexibility in cases where an individual is injured by an uninsured motorist without recourse. In other words, the objective of New Mexico insurance law—to protect against the public hazard of uninsured drivers—often supersedes more obvious readings of the statutory language.

This has manifest in a test adopted by New Mexico courts. *Cuevas*, 130 N.M. at 541-42 (applying a test derived from *Allstate Ins. Co. v. Graham*—(1) whether the plaintiff "was engaged in a transaction related to the use of the insured car," (2) whether the plaintiff was within a "close proximity to the insured car," and (3) whether an "intervening cause wholly disassociated from, independent of or remote from the use of the insured car" broke the causal connection between the plaintiff and the insured car at the time of accident) (citing 106 N.M. 779, 780, 750 P.2d 1105, 1106 (1988)) (internal quotations and citations omitted). Of particular importance to the test are the first and second inquiries. *Id*. ("Of particular importance to whether a claimant is 'occupying' a vehicle under the majority approach is whether the claimant's activities at the time of injury are in close proximity to the car and whether those activities are related to the operation and use of the car.") (citations omitted). This test has resulted in findings by New Mexico state and federal courts that victims of automobile-related injuries, regardless of whether the victim was *inside* an insured vehicle during an injury, were "occupying" their covered vehicles under New Mexico law.

Of these cases, the Court has found two with facts and holdings very applicable to this action. In *Cuevas*, the Court of Appeals of New Mexico found that "Plaintiff was occupying the insured car at the time of the accident . . . [because] Plaintiff was engaged in repairing the insured car . . . ." 130 N.M. at 542. As stipulated by the parties in *Cuevas*, the tire on the plaintiff's car became flat, and plaintiff moved the vehicle to the side of the highway. The car did not have a spare tire, so plaintiff hitched a ride to his mother's house and retrieved a spare tire. When he

10

returned, in the process of changing the tire, he was struck by an uninsured motorist while six to eight feet away from the insured vehicle. Indeed, the plaintiff was in the process of retrieving the tire from an entirely separate vehicle, not the insured vehicle, and the court nonetheless found that the exercise of retrieving and changing the tire in this instance was "engage[ment] in a transaction related to the use of the insured car." 130 N.M. at 542. Ultimately, the court in *Cuevas* found that these circumstances satisfied the transaction-oriented majority approach to resolving these issues under New Mexico law, and reversed the trial court's finding that the plaintiff did not "occupy" the insured vehicle at the time of the accident. *Id*. at 543.

Another helpful case is *Newkirk*. In *Newkirk*, the plaintiff was inside a gas station store buying donuts while waiting for an attendant to replace the washer fluid so he could go outside and clean his vehicle. 2008 WL 11322910, at *2. Another vehicle drove through the wall of the gas station and struck the plaintiff. It seems obvious that the plaintiff's presence in the gas station and concomitant injury had a somewhat unusual nexus with his "use" of the covered vehicle. However, consistent with the broad remedial intent of the Uninsured Motorist Statute and the plain language "oriented to the use of" an insured vehicle, the court in *Newkirk* found that the plaintiff was indeed "occupying" his commercial vehicle because he was in the gas station so he could ultimately clean his car windows. *Id*.

Defendant implies in its Surreply that the Court's December Order incorrectly granted *Newkirk* undue precedential value. 2008 WL 11322910. Specifically, Defendant believes that because *Newkirk* hasn't been cited, it shouldn't be considered, and that because *Newkirk* "was decided nearly thirteen years ago," it has no value. First, Defendant cites to a number of proposed alternative cases when making this argument, every one of which is older than *Newkirk*.[5] Second,

---

[5] *See Allstate Ins. Co. v. Graham*, 106 N.M. 779, 780 (1988); *State Farm Mut. Auto. Ins. Co. v. Baldonado*, 2003-NMCA-096, 134 N.M. 197 (Ct. App. 2003); *Miera v. State Farm Mut. Auto. Ins. Co.*, 2004-NMCA-059, 135 N.M. 574 (Ct. App. 2004); *Walker v. Farmers Ins. Co., Inc.*, 83 F.3d 349, 353 (10th Cir. 1996).

Defendant's argument fails to acknowledge the unusual factual circumstances presented in this matter. *Newkirk* involved the rare situation whereby a driver was injured outside of his vehicle, but because his actions were clearly oriented to the use of his vehicle, he was "occupying" the vehicle under the law's broad remedial use of the term "occupy." *See* Doc. 26 at 10 (citing 2008 WL 11322910, at *5). It is unsurprising that courts have not encountered many factual circumstances warranting reference to the *Newkirk* case or published any opinions with similar underlying facts. Furthermore, the facts of the subject case are far more analogous to *Newkirk* and *Cuevas* than to any of the cases cited by Defendant, and they are informative to the Court of how best to determine whether Plaintiff "occupied" the covered vehicle under New Mexico law.

Applied here, the principles underlying these cases lead the Court to conclude that Plaintiff "occupied" the covered vehicle and is therefore an insured under the Policy. First, Plaintiff's confrontation with John Doe was oriented to Plaintiff's use of the insured vehicle, as it was undertaken to prevent the vehicle's theft. The Court underwent this analysis in detail in its December Order. *See* Doc. 26 at 10 ("Plaintiff was certainly involved in a transaction essential to the use of the covered vehicle, for if it was stolen, neither he nor his employer would be able to continue using the vehicle . . . ."). Second, Plaintiff's proximity to the covered vehicle was sufficient under the test. *See id.* (noting that Plaintiff had stronger proximity to the covered vehicle than in the analogous case, *Newkirk*, where the plaintiff satisfied the test while standing in line at a gas station store) (citing 2008 WL 11322910); *see also Cuevas*, 130 N.M. at 540 (finding plaintiff struck while changing a tire "six to eight feet" away from the covered vehicle to have been occupying the covered vehicle). Third, no "intervening cause wholly disassociated from" the insured vehicle broke the causal connection between Plaintiff and the covered vehicle when he was shot. *Cuevas*, 130 N.M. at 542. No specific instance of conduct by Plaintiff, such as tackling John Doe, or by the assailants, such are leaving the uninsured vehicle and shooting the Plaintiff,

was enough to sever the connection between Plaintiff's actions and protection of the vehicle, or the connection between the get-away car and the shooting.

It can hardly be argued that *Newkirk* and/or *Cuevas* have facts materially different from the subject litigation, and Defendant's Surreply has not brought to light anything which undermines the Court's previous finding on this matter. Even viewed in the light most favorable to Defendant, there can be only one conclusion—Plaintiff's actions were geared toward preventing the covered vehicle from being stolen, and by extension, preserving Plaintiff's use of the vehicle. For these reasons, the Court found in its December Order, and reiterates here, that Plaintiff "occupied" the covered vehicle at the time of the shooting consistent with New Mexico courts' interpretation of § 66-5-301.

Defendant nevertheless questions the Court's analysis. Doc. 30 at 5. Specifically, Defendant believes that necessary assumptions made by the Court were instead improper findings of fact that could not be reasonably inferred from the stipulated facts. For instance, Defendant submitted in its Surreply and during the Hearing that the stipulated facts do *not* show that Plaintiff was attempting to prevent the theft of the company vehicle.[6] Defendant proposes instead that Plaintiff merely wanted to implement his own kind of "vigilante justice," and that the Court must therefore infer this fact in Defendant's favor and find that Plaintiff's conduct was not oriented to the use of the vehicle. However, Defendant's proposed alternative fact is attenuated and unreasonable in light of the stipulated facts.[7] *See Decker Truck Line*, 820 F.3d at 1159 (finding

---

[6] The court in *Cuevas* made a similar assumption and found that changing the tire for the insured vehicle was done "so that [plaintiff] could again use it." *Id*. The stipulated facts, or at least their recitation in the *Cuevas* opinion, do not state that retrieving or changing the tire was done so that the plaintiff could again use the vehicle. *See id*., at 450. This was reasonably inferred by the court in *Cuevas*, just as this Court reasonably inferred that Plaintiff Almager's attempt to halt the theft of his company vehicle was, indeed, to prevent its theft and secure his possession of it.

[7] The stipulated facts state that, while working inside the Albuquerque Housing Authority building, Plaintiff became aware that John Doe was attempting to steal his company vehicle from the parking lot outside the building, and that Plaintiff then left the building to confront and ultimately tackle John Doe during the attempted theft. Doc. 20 at 3.

that on summary judgment, though the Court must draw all factual inferences in favor of the nonmovant, those inferences must be reasonable). Moreover, there is only one reasonable reading of the facts: Defendant's actions at the time of the shooting were to halt the theft of his company vehicle and were thereby oriented to the vehicle's use. *See id.* (finding summary judgment proper where only one inference may be drawn from the undisputed facts) (citing *Empire Elecs. Co.*, 311 F.2d at 180). Defendant's objection to the Court's analysis is therefore without merit.[8]

### III. The Get-Away Car was an Uninsured Motor Vehicle.

Defendant next argues that the get-away car was not an "uninsured motor vehicle" because the Policy states that *the uninsured vehicle* in a hit-and-run must either (1) hit an "insured" or (2) cause "bodily injury" with "no physical contact" with an "insured." Doc. 30 at 8. Plaintiff was not "hit" with the uninsured vehicle, thus (1) above is not satisfied. However, with respect to (2), Defendant's position appears to be that the uninsured vehicle played no part in John Doe's injury, or that John Doe caused the injury to himself by tackling John Doe. The Court disagrees.

The question here is this: Must a vehicle physically hit an individual for it to cause an injury, or does having a fundamental role in an injury suffice to cause the injury? The Policy does not resolve this question, but the sensible answer is the latter, and this is supported under the law. New Mexico courts seek to determine what constitutes the "cause" of a bodily injury in their "ownership, maintenance or use" analyses. As the Court explained in the December Order, "[h]it-and-run drivers, including drive-by shooters *who did not physically 'hit' an insured* with an unknown vehicle, are considered 'a specie of uninsured motorist' so long as, inter alia, the *use* of the unknown vehicle (in this case, the get-away car) causes bodily injury to an insured." *See* Doc.

---

[8] Defendant makes the same arguments as to every reasonable assumption made by the Court in interpreting the stipulated facts—that the record does not support a finding of those facts and that they were therefore unreasonable. These arguments fail for the same reason as Defendant's argument above—that there is only one remotely reasonable interpretation to be rendered about the facts. Defendant also attempts to construe the Court's hypotheticals as findings of fact, when such hypotheticals were made to demonstrate why Defendant failed to meet the summary judgment standard in the context of its own motion.

26 at 3, n.2 (citing *State Farm Mut. Auto. Ins. Co. v. Luebbers*, 138 N.M. 289, 293 (N.M. Ct. App. 2005)) (emphasis added). The Court also notes that when making this determination, "absolute certainty" is not required "as to whether the injury would or would not have occurred absent use of the uninsured vehicle; it merely requires that the vehicle itself *contribute* to the harm inflicted upon Plaintiff." *Id*. at 14 (citing *Britt v. Phoenix Indemnity*, 120 N.M. 813, 818 (1995)) (emphasis added). Therefore, the issue of determining whether a vehicle caused an injury, and accordingly whether a vehicle is a proper "uninsured motor vehicle," is resolved by determining whether the injury arose from the "use" of a vehicle.

As the Court noted in the December Order, John Doe's attack on Plaintiff certainly involved the "use" of the get-away car. It remained on the scene (with the female driver inside) for a reason, and no court or reasonable factfinder would deduce that this reason was anything other than to operate as a look-out or to serve as a get-away car. Defendant argues that these facts are not explicitly stated in the Joint Stipulated Facts, and therefore cannot be deduced, but there is simply no other reasonable explanation, and the undisputed fact that the vehicle remained on the scene during the attempted theft, that the woman got out of the vehicle during the attempted theft and said "take care of him" to the John Doe assailant, and then left the scene in the vehicle with the John Doe assailant after the shooting and attempted theft supports this inference. *See* Doc. 18 at 1-2; *Decker Truck Line*, 820 F.3d at 1159 (finding that where only one inference may be drawn from the undisputed facts, summary judgment is proper). There is no *reasonable* factual dispute here undermining Plaintiff's claim, and the Court accordingly finds that the obvious "use" of the get-away car to facilitate the attempted theft of the covered vehicle, and later, the shooting of Plaintiff, satisfies the Policy's requirement that the uninsured vehicle "cause" the injury and satisfies the parallel requirements of New Mexico law.

15

**IV.   There was no Intervening Act that Broke the Causal Link.**

Defendant next argues that the shooting of Plaintiff constituted an intervening intentional tort sufficient to sever the causal link between the get-away car and the injury. *See* Doc. 30 at 8. Defendant questions the Court's use of *Britt v. Phoenix Indem. Ins. Co.*, 120 N.M. 813, 907 P.2d 994 (1995) and *State Farm Mut. Auto. Ins. Co. v. Blystra*, 86 F.3d 1007, 1012 (10th Cir. 1996), claiming that in both instances "use" of the get-away car was established only by the presence of the assailant *inside* the get-away car at the time of a shooting. Specifically, Defendant claims that the Tenth Circuit effectively requires an assailant to be physically inside an uninsured vehicle for the causal chain to remain intact. Doc. 30 at 10 ("[A]ny putative causal link with the uninsured vehicle was broken due to the assailant's presence outside of it at the time Plaintiff was shot[.]"). A reading of the Tenth Circuit's opinion in *Blystra* is not so determinative, however. At no place in the text does *Blystra* actually say what Defendant implies that it does—that is, the Tenth Circuit did not find that a driver of an uninsured vehicle must be inside the vehicle to conclude that the causal link was not broken. Rather, the Tenth Circuit in *Blystra* found that where there was a dispute as to whether a hit-and-run drive-by shooter was using the vehicle as part of the shooting, it was often the case that his presence inside the vehicle was sufficient to show causation. A more applicable case is *Barncastle v. Am. Nat'l Prop. & Cas. Cos.*, wherein the New Mexico Court of Appeals found that a plaintiff shot by an assailant *who exited* an uninsured vehicle prior to the shooting satisfied the requirements of *Britt* and *Blystra*. 129 N.M. 672 (Ct. App. 2000).[9] *Barncastle* is the most relevant case, where a vehicle played multiple roles in an injury and there was no intervening act. *Compare* 129 N.M. at 674 (noting the finding in *Blystra* that "the *Britt* court recognized that, given the right facts, the causal chain might not be broken even though the

---

[9] Though clear from the facts and not genuinely disputed in this matter, the Court also notes that the get-away car was put to its normal use. *See Barncastle*, 129 N.M. at 674 (finding that using a vehicle to drive to the location of a crime was "normal use" of the vehicle under the requirements of *Britt*) (citing 120 N.M. at 819, 907 P.2d at 1000).

16

assailant commits his assault after exiting the stopped vehicle" and finding that the vehicle was an "integral element" to the attack because it allowed the assailant to "get into position" for the crime and later to "escape the scene") (internal quotations and citations omitted), *with Hartford v. Tollardo*, 409 F. Supp. 2d 1301, 1305 (D.N.M. 2005) (finding that because of an intervening act, namely, the decision to give up searching for the victim and return home, the shooter's assault of victim did not involve the "use" of his vehicle because "[the shooter] was not employing his truck for anything as dramatic as murder, but for something much more prosaic: returning to his apartment").

Defendant also refers to other caselaw in which a vehicle used merely as a get-away from a crime was found to have no causal relationship with such crime. Here, however, the get-away car was not merely transportation from the scene of the shooting; it brought John Doe and the unidentified woman to the scene, it remained on the scene throughout the attempted theft and shooting, it concealed the identity of John Doe's accomplice during the theft and until she exited the vehicle to instruct John Doe to shoot Plaintiff, and was then used as a get-away car to leave the scene.[10]

---

[10] *Blystra* has established that a drive-by shooting is nearly a de facto "cause" of injury where a court must determine whether an uninsured vehicle "causes" an injury. 86 F.3d at 1012 ("When an automobile is used by an assailant to undertake a drive-by shooting, the automobile is almost by definition an 'active accessory' to the assault."). According to the Tenth Circuit, this is because a vehicle offers several advantages to a shooter; for instance, (1) it allows an assailant to "unsuspiciously and quickly approach" while hiding from the public that "he is armed with a gun," (2) it conceals the assailant's identity during an assault, and (3) the assailant can use the vehicle to "leave the scene quickly and avoid apprehension." *Id*. The facts present here are not those of a conventional drive-by shooting, but the holding in *Blystra* is important to these facts. Defendant stakes much of its argument on cases in which a vehicle used simply to leave the scene of the crime was found not to be an accessory in the crime, and claims that because John Doe did not shoot Plaintiff *from inside* the uninsured vehicle, the facts here are the same as these cases and the Court should find that the uninsured vehicle played no role in the shooting of Plaintiff. *Blystra*, however, notes that a drive-by shooter enjoys certain advantages through use of a vehicle, to include his ability to flee the scene. Together, these advantages establish sufficient cause between the uninsured vehicle and the injury to the victim. Here, John Doe enjoyed similar advantages, assumed by the Court in the same way they were assumed in *Blystra*: the vehicle brought John Doe and his accomplice to the covered vehicle so it could be stolen, it remained on the scene, concealing the accomplice until she revealed herself and instructed John Doe to shoot Plaintiff, and it allowed John Doe and the accomplice to flee together after the shooting of Plaintiff. This is not an example of a mere get-away car; indeed, the get-away car was instrumental from the beginning to the end of the interaction, and consistent with *Blystra*, Thus, there is no question that Plaintiff was injured through the get-away car's use.

The same deficiency is present in Defendant's reliance on cases in which an uninsured vehicle was used merely to transport an assailant *to* the scene of an injury. *See Gov't Employees Ins. Co. v. Moore,* 427 Fed. Appx. 643, 649 (10th Cir. 2011), citing *State Farm v. Fisher*, 618 F. 3d 1103 (10th Cir. 2010). None of these cases are analogous to the facts at bar, where the get-away car and the woman inside the get-away car played a *continuous* role in both the shooting of Plaintiff and the underlying attempted theft of Plaintiff's vehicle. For this reason, as the Court observed in its December Order, there remained a nexus between the use of the get-away car and Plaintiff's injury.

After a very careful and lengthy review of the unusual facts in this case, the Court has come to the conclusion that the get-away car containing the accomplice was present for a reason—to offer support for the attempted theft that ultimately led to the shooting of Plaintiff. Otherwise, the accomplice in the get-away car would have left when John Doe set out to steal the insured vehicle. Defendant of course submits, again, that this finding is based on an unsupported reading of the facts, but the Court must wonder what alternative reading of the facts Defendant could submit that would be remotely reasonable and create a *genuine* factual dispute or material ambiguity under the summary judgment standard. *See Decker Truck Line*, 820 F.3d at 1159 (finding that inferences must be "reasonable" and that, where only one inference may be drawn from the facts, summary judgment is proper). Upon its own consideration of the stipulated facts, the Court has come up with none, and finds that any reasonable jury would come to the same conclusion. For this reason, Plaintiff has successfully shown that no genuine issue of material fact exists which undermines the finding that his injury arose from the *use* of the get-away car or that the get-away car "*contribute[d]* to the harm inflicted[.]" *See Luebbers*, 138 N.M. at 293 (citing *Britt*, 120 N.M. at 818) (emphasis added).

## CONCLUSION

Based on the record and controlling New Mexico law, the Court finds and concludes that Plaintiff was "occupying" the covered vehicle at the time of the shooting, as Plaintiff's interaction with the John Doe assailant was a transaction oriented to Plaintiff's use of the covered vehicle. The other factors considered in *Cuevas* and *Graham* do not undermine this finding; accordingly, Plaintiff was an "insured" under the Policy at the time of the shooting. The Court also finds and concludes that the shooting of Plaintiff arose from the "use" of the uninsured get-away car, as the "use" of the get-away car was central to the underlying attempted theft of the covered vehicle as well as the shooting, and the unknown woman's use of the get-away car throughout the course of the incident illustrates the get-away car's continuing importance to the attempted theft, the shooting itself, and the assailant's escape from the scene. There are no legitimate factual disputes which undermine Plaintiff's entitlement to judgment as a matter of law on these matters. Therefore, for the reasons set forth herein and in the December Order, the Court hereby **GRANTS** Plaintiff's motion for summary judgment.

Because the parties have expressed an interest in resolving this case without trial, the Court will not order a trial at this time on the sole issue of the amount of damages to award Plaintiff. The Case is hereby referred back to the magistrate judge to determine the parties' preferences in resolving the one remaining issue of law in this litigation—damages.

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE